IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Boards of Trustees of the Ohio :
Laborers' Fringe Benefit :
Programs, :
      Plaintiffs, :
       :
   v. : Case No. 2:10-cv-550
       :
       : JUDGE ALGENON L. MARBLEY
O.C.I. Construction, Inc., : Magistrate Judge Kemp
et al., :
      Defendants. :

## OPINION AND ORDER

This matter is before the Court to consider the motion to stay filed by defendants O.C.I. Construction, Inc. and Robert R. Wantz (collectively, "OCI"). The defendants seek a stay pending the resolution of grievance proceedings and potential arbitration between OCI and the Laborers' District Council of Ohio and its Local Union #860. Plaintiff Boards of Trustees of the Ohio Laborers' Fringe Benefit Programs ("Trustees") oppose a stay and the motion has been fully briefed. For the following reasons, the motion to stay will be granted.

### I. Background

The Trustees filed this case seeking recovery of delinquent fringe benefit contributions, among other relief, from OCI pursuant to Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. §185(a), and Section 502(a)(3) of the Employees Retirement Income Security Act (ERISA), 29 U.S.C. §1132. According to the complaint, OCI has breached the terms of a collective bargaining agreement by failing to make monthly contributions to the Ohio Laborers' Fringe Benefit Programs and the LIUNA Tri-Funds.

In its answer, OCI contends that the employees for which the Trustees are seeking contributions are not covered by the collective bargaining agreement. OCI also asserts that these employees do not perform work covered by the agreement and are not members of the bargaining units covered by the agreement. Consequently, OCI claims that it has made all applicable contributions required by the agreement.

OCI's motion to stay with attached exhibits sets forth the following additional background information.  On June 2, 2010, the Ohio Laborers' Fringe Benefit Programs issued the findings of an audit identifying twenty employees it believed were covered under the agreement in addition to the five OCI employees who had signed union authorization cards.  The following day, the Union notified OCI that it had initiated a grievance in accordance with the agreement alleging OCI's violations relating to hiring procedures, union security, and wages.  The Union subsequently sent a letter to OCI requesting a meeting to settle the grievance and indicating the potential for arbitration.  On June 15, 2010, the Boards of Trustees filed the current action.  The Trustees do not dispute this additional background information.

The collective bargaining agreement at issue - the Ohio Highway-Heavy-Municipal-Utility State Construction Agreement - contains the following provisions relevant to the current motion.

## ARTICLE IX
## WAGE FRINGE PROGRAMS

47. ...

> All contractors bound hereby agree to be bound by the Agreement and Declarations of Trust, as amended, establishing the Pension Fund, Health and Welfare Plan, Ohio L.E.C.E.T., Training and Apprenticeship, and LIUNA Tri-Funds, copies of which all parties agree have been furnished to, and read by all Contractors bound hereby prior to execution of this Agreement.  It is mutually agreed that the provisions of said Agreements and Declarations of Trust and any rules, regulations or plans adopted by the Trustees pursuant thereto shall become a part of this Agreement as though fully written herein.  All Contractors bound hereby irrevocably designate the Contractor Trustees of said Funds and Plan, and their successors as their representatives for the purposes set forth in said Agreements and Declaration of Trust.
>
> Contractors shall pay fringe benefit contributions to the respective Funds on behalf of any employee performing work within the jurisdiction of this Agreement at the rates specified in **Exhibit B** for all hours worked.
> ...
>
> 48.  In no event shall the foregoing provisions relating to fringe benefits be subject to or suitable for grievance and arbitration under **Article XIII** of this Agreement.
> ...

## ARTICLE XIII
## GRIEVANCES AND ARBITRATION

60. The parties agree that all differences that arise during the life of this Agreement between any Contractor and any Union or members thereof, except as otherwise limited herein, are to be settled in accordance with the grievance and arbitration procedure set forth.

...

61. In the event that differences arise during the term of this Agreement concerning its interpretation or application, a prompt effort shall be made to settle employee or Union initiated differences at the site of the dispute, first between the Contractor and the Local Union and its members involved in the dispute. In case of the Contractor initiated grievance, the effort to settle such difference shall be made between the Contractor and the Local Union Business Manager. In the case of either an employee, Union or Contractor grievance, the Contractor and the Union have three (3) days to settle the difference.

...

63. In the event the parties named in Step 2 are unable to settle the dispute within ten (10) days, either party may refer the matter to arbitration by written notice to the other party within ten (10) days thereafter, for final and binding decision by a single qualified arbitrator. ...

64. ...[The arbitrator's] authority is limited to matters of dispute, differences, disagreement or controversy arising concerning the interpretation, construction or application of the terms of this Agreement....

...

## II.  The Motion to Stay

In its motion to stay, OCI contends that the Trustees' claim in this action, asserted as a breach of the agreement, is contingent upon the outcome of the grievance and arbitration process between the Union and OCI. OCI acknowledges that the Court has jurisdiction to decide the issue as presented by the Trustees, but they contend that there is a preliminary matter that must be addressed first – whether the twenty employees at issue are covered by the collective bargaining agreement. OCI's position, simply stated, is that a stay is necessary because, if the twenty employees are not covered, it has no obligation to make contributions to the funds on their behalf and the Trustees have no claim for breach of the agreement.

As OCI explains, pursuant to Article XIII, the issue of whether the twenty employees are covered by the agreement must be addressed through a grievance procedure and possibly

3

through the arbitration process.  OCI asserts that it is currently involved in the grievance and arbitration process with the Union at the Union's initiation.  In light of this, OCI requests that a stay be entered in this case pending a resolution of that process.  In support of its position that a stay is appropriate here, OCI relies on *Palumbo v. United Parcel Service of America, Inc.*, 2007 WL 2900403 (D.N.J. 2007), *Seborowski v. Pittsburgh Press Co.*, 188 F.3d 163 (3rd Cir. 1999), and *Viggiano v. Shenango China Div. of Anchor Hocking Corp.*, 750 F.2d 276, 279 (3rd Cir. 1985).

In response, the Trustees oppose a stay contending, without authority, that the Court is not bound by the grievance resolution in determining the right to contributions under ERISA. Further, the Trustees assert that the collective bargaining agreement specifically exempts contribution enforcement from the grievance and arbitration process.  In opposing a stay, the Trustees rely on *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364 (1989), a case in which they contend the United States Supreme Court held that fiduciaries do not need to submit to arbitration over the definition of terms in a collective bargaining agreement before seeking judicial enforcement of contributions.  As explained by the Trustees, *Schneider* stands for the proposition that a presumption of arbitrability does not apply in disputes between fund trustees and employers even where the dispute raises issues of interpretation of the collective bargaining agreement.

The Trustees also contend that *Schneider* recognizes a distinction between union-employer disputes and disputes between fund trustees and employers.  According to the Trustees, this distinction is critical and none of the cases cited by OCI in support of a stay involved fiduciaries enforcing multi-employer benefit plans.  Finally, the Trustees argue that OCI is trying to delay and dilute the contribution collection process through its request for a stay.

In reply, OCI contends that the Trustees' argument completely misses the point because OCI is not asserting that the Trustees must arbitrate the dispute.  Rather, as OCI explains, it simply is asking the Court to stay this action while the parties who are bound by the agreement's grievance and arbitration provision participate in that process.  As succinctly stated in its reply, "OCI is neither disputing the Board of Trustees' right to collect for covered employees nor asserting that the Board of Trustees must arbitrate to collect contributions."  *See* Reply in Support of Motion to Stay Proceedings (Doc. #30), at p.3.  Further, to the extent the Trustees

4

rely on *Schneider*, OCI contends that it is not controlling here because OCI is not seeking to have the Trustees submit to arbitration. In short, OCI asserts that the resolution of the issue between the Union and OCI - whether the twenty employees are in fact covered by the collective bargaining agreement - will have a dispositive impact on this action. If the outcome of the grievance and arbitration procedure is that the disputed employees are not covered by the collective bargaining agreement, OCI is not obligated to make contributions on their behalf and the Trustees have no claim to pursue in this action.

### III. Standard of Review

"A district court has the inherent power to stay proceedings based on its authority to manage its docket efficiently." *Ferrell v. Wyeth-Ayerst Laboratories, Inc.*, 2005 WL 2709623, *1 (S.D. Ohio Oct. 21, 2005) *citing In re Airline Pilots Assn. v. Miller*, 523 U.S. 866, 880 (1998); *see also Landis v. North American Co.*, 299 U.S. 248, 254-255 (1936). However, a "'court must tread carefully in granting a stay of proceedings since a party has a right to a determination of its rights and liabilities without undue delay.'" *Id. quoting Ohio Envtl. Council v. U.S. Dist. Ct.*, 565 F.2d 393, 396 (6th Cir. 1977). Courts frequently consider such factors as (1) the need for a stay, Id.; (2) the stage of litigation; (3) whether the non-moving party will be "unduly prejudice[d] or tactically disadvantage[d]"; (4) whether a stay will simplify the issues; and (5) whether burden of litigation will be reduced for both the parties and the court. *Grice Engineering, Inc. v. JG Innovations, Inc.*, 691 F.Supp.2d 915, 920 (W.D. Wis. 2010) (Citations omitted).

### IV. Analysis

Initially, the Court notes that the parties' arguments as outlined above illustrate a fundamental disparity in the understanding of the underlying basis of OCI's request for a stay. On one hand, the Trustees appear to argue that the collective bargaining agreement specifically exempts the issue of contributions from the grievance and arbitration procedure, and, as a result, a stay is not warranted because the resolution of that process will not bind the Court with respect to the Trustees' right to contributions. On the other hand, based on their reliance on *Schneider*, the crux of the Trustees' opposition appears to be their belief that OCI is asserting that the Trustees must engage in the arbitration process before they can pursue their claim here.

However, OCI is not arguing that the issue of the Trustees' right to contributions must be

5

arbitrated. Instead, as OCI has explained, the issue being arbitrated between it and the Union is whether the twenty employees at issue meet the definition of an "employee" covered under the contract. Nor, as OCI has made clear, is it seeking a stay because it believes that arbitration of any issue between it and the Trustees is a prerequisite to the current action. OCI is not asserting any exhaustion requirement or seeking to compel arbitration with the Trustees. Rather, OCI's fairly straightforward request for a stay arises because it already is engaged in a grievance and arbitration procedure with the Union over the definition of "employee" the outcome of which, it contends, will have a dispositive impact on the Trustees' claim.

Under this scenario, the Court does not find *Schneider* to be controlling despite the Trustees's arguments to the contrary. *Schneider* is generally understood as stating that "ERISA provides for immediate access to the federal courts without resort to the labor arbitration forum in proper circumstances." *Vaughn v. Flowserve Corp.*, 2008 WL 4792542, *7 (D.N.J. Oct. 30, 2008) *quoting Viggiano v. Shenango China Div. of Anchor Hocking Corp.*, 750 F.2d 276, 279 (3rd Cir. 1985); *see also Jaffee v. Shanin Co.*, 763 F.Supp. 286, 288-289 (N.D. Ill. 1991) (In *Schneider*, the court "found that the parties had not intended under the circumstances for the trustees to submit to arbitration before being able to sue in federal court"). As the Court reads *Schneider*, absent the express intention in a collective bargaining agreement or trust document requiring arbitration of disputes between trustees and employers, no such obligation will be inferred. Consequently, were the issue presented by OCI's motion whether the Trustees are required to arbitrate their claim before pursuing this federal court action, *Schneider* would require some analysis of the parties' intent as to this issue.

However, this is not the issue presented by OCI's motion. Rather, as the Court understands OCI's position, OCI is neither suggesting that the Trustees are required to submit to arbitration nor asking the Court to infer such an obligation here. Again, OCI requests a stay only while the grievance and arbitration procedure addressed to the definition of "covered employee" and already initiated between the Union and OCI - parties bound by the provisions of the agreement - is completed. Consequently, the Court finds the Trustees' reliance on *Schneider* as support for denying OCI's request for a stay to be misplaced.

The Trustees also argue, again relying on *Schneider*, that the identity of the plaintiff is a critical distinction here, making the cases relied upon by OCI irrelevant. The Court does not

6

agree. While the Trustees are correct that the cases cited by OCI are not, as they explain, "lawsuits brought by fiduciaries enforcing multi-employer benefit plans," that does not mean that their underlying rationale for granting a stay is not helpful here. As the following discussion of OCI's cited cases demonstrates, the determinative factor leading to the entry of a stay was the existence of a "threshold" question that needed to be addressed before ERISA became relevant.

For example, in *Viggiano*, a case brought by union members against their employer over the right to insurance benefits, the Third Circuit remanded for the entry of a stay stating that

> Although the right to insurance benefits under the Plan is an essential part of this case, the immediate question is the source of the obligation to fund those entitlements. Unless the collective bargaining agreement establishes a duty to maintain the program, ERISA does not come into play.

*Id*. at 280.

Further, in *Seborowski*, a case brought by employees against their employer alleging the violation of a bonus incentive agreement, the district court had stayed proceedings of the breach of fiduciary claim pending arbitration. The Third Circuit, in granting preclusive effect to the arbitrator's decision, relied on its *Viggiano* decision and held that

> In order to succeed on their breach of fiduciary duty claim, Appellants must prove that the trustees in bad faith failed to follow the terms of the plan. (Citation omitted). An essential element of this showing is that the trustees in fact failed to follow the terms of the plan. If their conduct with respect to the collection of the employer contribution was in accordance with Section 2A and 5 as interpreted by the arbitrator, it necessarily follows that Appellants cannot make the required showing.

*Id*. at 170.

Finally, in *Palumbo*, a union filed suit to enforce the company's obligation to contribute to health and welfare plans. In granting a motion to stay, the district court held that, like the claims in *Viggiano* and *Seborowski*,

> ...Plaintiffs' claims - whether for breach of fiduciary duty or violation of ERISA's prohibited transaction provisions - turn on a threshold contractual determination, namely whether UPS owes contributions at a specified rate under the CBA. The LMRA requires that this threshold determination be resolved pursuant to the grievance and arbitration procedures contained in the CBA. ERISA is only relevant after the issue regarding UPS's contractual obligation has been resolved. As such, this is precisely the type of dispute that is best committed

to the arbitral process. (Citation omitted).

*Id*. at *6.

The Court finds the rationale set forth in these cases to be applicable to this case. Here, there is no question that the Trustees' claim "turn[s] on a threshold contractual determination" of the definition of an "employee" covered under the agreement. Further, as the language of the agreement set forth above indicates, this matter of contract interpretation is a determination that must be made under the terms of the collective bargaining agreement between the Union and OCI. Consequently, the current ERISA action only "comes into play" if the determination is made that these twenty employees are employees covered by the agreement.

OCI does not dispute that, if the agreement is found to cover these twenty employees, it will be obligated for contributions on their behalf. It is only in an effort to preclude a premature resolution of the dollar amount of its contribution obligation that OCI requests a stay. Under these circumstances, the Court, in its discretion, finds that a stay is appropriate. To hold otherwise might result in OCI's overpayment of contributions if this case were to resolve favorably to the Trustees prior to an arbitration decision which may hold that the twenty employees at issue are not covered by the agreement. Rather than create a potential disgorgement issue, the more reasonable course of action is a stay.

In addition to the above reasons, also significant to the Court in reaching this conclusion is the fact that this case is in its early stages and the grievance and arbitration process has already begun. Additionally, as OCI has argued, the resolution of that process will refine the issues in this case and, if OCI's interpretation of the agreement proves correct, may minimize the need for this litigation at all. Further, although they suggest, without any argument or evidence, that OCI is seeking to dilute the collection process, the Trustees have not asserted any real prejudice they will suffer if a stay is granted. Moreover, the Court is not convinced that any relief the Trustees may be entitled to would be jeopardized by a stay. *See generally Fujikawa v. Gushiken*, 823 F.2d 1341, 1347 (9th Cir. 1987)(discussing procedural factors considered in staying an ERISA action).

## V. Conclusion

Based on the foregoing, defendant's motion to stay (Doc. #23) is **GRANTED**. This action is **STAYED** pending the resolution of the grievance and arbitration process between OCI

and the Union. OCI shall notify the Court within fourteen days of the conclusion of that process.

**IT IS SO ORDERED.**

                                                    s/Algenon L. Marbley  
**ALGENON L. MARBLEY**  
**UNITED STATES DISTRICT JUDGE**

**DATED:** March 14, 2011